1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11   RICARDO A. CARIGNAN,              )   Civil No. 08cv2296 BTM (RBB)
                                       )
12                  Petitioner,        )   **REPORT AND RECOMMENDATION**
                                       )   **DENYING FIRST AMENDED PETITION**
13   v.                                )   **FOR WRIT OF HABEAS CORPUS**
                                       )   **[DOC. NO. 4]**
14   R. ADAMS, Warden,                 )
                                       )
15                  Respondent.        )
     _____)

16

17        Petitioner Ricardo Carignan, a state prisoner proceeding pro

18   se and in forma pauperis, filed a Petition for Writ of Habeas

19   Corpus pursuant to 28 U.S.C. § 2254 on December 10, 2008 [doc. no.

20   1], and a First Amended Petition for Writ of Habeas Corpus on

21   February 11, 2009 [doc. no. 4].[1]  Petitioner asserts his Sixth

22   Amendment rights were violated due to ineffective assistance of

23   counsel, and his Fourteenth Amendments rights were violated when

24   the trial court admitted evidence of Petitioner's parole status

25   and a prior act of assaulting an ex-girlfriend.  (Am. Pet. 6-11.)

26

27   _____

28        [1] Because Carignan's Amended Petition is not consecutively
     paginated, the Court will cite this document using the numbers
     assigned by the Court's electronic case filing system.

                                      1                        08cv2296 BTM (RBB)

On April 13, 2009, Respondent filed an Answer, a Memorandum of Points and Authorities, and a Notice of Lodgment [doc. no. 9]. Petitioner's Traverse was filed nunc pro tunc to July 2, 2009 [doc. no. 13].

The Court has reviewed the Amended Petition, Respondent's Answer and Memorandum of Points and Authorities, Petitioner's Traverse, and the lodgments. For the reasons discussed below, the Court recommends that Carignan's Amended Petition be **DENIED.**

### I. FACTUAL BACKGROUND

In April 2006, Carignan, his girlfriend, Karla Cardenas, and her three children lived together in a Chula Vista, California, apartment. (Lodgment No. 2, Rep.'s Appeal Tr., vol. 1, 120–21, Dec. 5, 2006.) At Petitioner's trial, Cardenas testified that on the night of April 22, 2006, she and Carignan got into an argument after they attended her daughter's birthday party. (<u>Id.</u> at 120–22.) Carignan became upset because he saw an individual at the party that he believed Cardenas's family had invited so she could "hook–up" with him. (<u>Id.</u> at 123.)

At the apartment, Petitioner told Cardenas that she was "a bitch, a slut, [and] a whore." (<u>Id.</u> at 124.) While Carignan continued to call her names, she became "fed up" and reacted by pouring water on him and telling him, "Get the fuck out." (<u>Id.</u> at 124, 126.) Petitioner, who had been lying in bed, got up and began to push and hit Cardenas as she backed away from the bedroom and moved down a hallway. (<u>Id.</u> at 126–27.) As Cardenas was backing up, she tripped and fell backwards in the kitchen. (<u>Id.</u> at 128–29.) While she was on the ground, Carignan got on top of

her, hit her, and "got an extension cord and [held] it around the front part of [her] neck."  (<u>Id.</u> at 130.)

    After struggling on the floor for some time and telling Cardenas, "this what [you] want," Carignan got off her and went into the bedroom to put on his shoes.  (<u>Id.</u> at 135, 136–37.)  She returned to the bedroom and told Carignan that he was a "monster" and told him to leave.  (<u>Id.</u> at 137.)  Carignan again held Cardenas down and choked her with his hands.  (<u>Id.</u>)  She was able to escape his grasp once but was put into a headlock by Petitioner.  (<u>Id.</u> at 138.)  While in the headlock, Cardenas bit Carignan and he released her.  (<u>Id.</u> at 139.)  As she attempted to flee the bedroom, Cardenas fell and was immediately kicked and punched by Petitioner.  (<u>Id.</u> at 139–40.)  After she repeatedly asked to be left alone, Carignan stopped kicking and punching her and went into the kitchen.  (<u>Id.</u> at 141.)

    In the kitchen, Carignan told Cardenas, "Watch, you're going to see right now.  Watch, you're going to see."  (<u>Id.</u>)  Petitioner was sifting through the utensil drawer, where the knives were kept, so she called 911.  (<u>Id.</u> at 142.)  Carignan saw her and ripped the phone out of the wall.  (<u>Id.</u>)  Petitioner said, "You called the cops, you rat bitch.  I can't believe you called the fucking cops, you rat bitch."  (<u>Id.</u> at 143.)  Cardenas ran on to the balcony and screamed for help.  (<u>Id.</u> at 145.)  Petitioner followed, pushed her out of the way, and closed the door.  (<u>Id.</u> at 145–46.)

    After the April 22, 2006, incident, Cardenas decided that she no longer wanted to see Carignan, so she removed the apartment key and the key to her mother's house from his key ring.  (<u>Id.</u> at

149.)  She left the apartment, and some time later, Petitioner called her and indicated he was leaving the apartment to get some food.  (Id. at 152.)  Cardenas went back to the apartment and locked the door.  (Id.)  Petitioner returned but was locked out; he "kept calling [Cardenas's] cell phone and he [rang] the door bell."  (Id.)  For the next week, Carignan did not stay or go inside the apartment.  (Lodgment No. 2, Rep.'s Appeal Tr., vol. 2, 169–71, Dec. 6, 2006.)  But the two talked on the phone everyday.  (Id. at 169.)

On April 30, 2006, Petitioner called Cardenas and asked how she was feeling.  (Id. at 171.)  She responded, "I am doing much better.  As a matter of fact tomorrow will be a better day and everyday will get better and better."  (Id.)  Carignan replied, "What do you mean?  You're going to go to the police you rat bitch.  Just know that if you go to the cops I'll send some crazy motherfucker to get you.  Watch your babies."  (Id. at 171–72.)  Cardenas hung up the phone, but Petitioner called her again.  (Id. at 173.)  Carignan told her that he believed she was going to go to Steve, his parole officer, and again called her a "rat."  (Id.)  After this conversation, Cardenas went to the Chula Vista Police Station and filed a report against Carignan.  (Id. at 175.)

At trial, Cardenas testified that she knew Petitioner had harmed others in the past and that "he knew people that were capable of hurting other people[.]"  (Id. at 172–73.)  The prosecutor asked, "During the course of your relationship, did [Carignan] discuss with you that in the past he has beat up an ex-girlfriend because she ratted on him?"  (Id. at 173.)  Cardenas responded, "Yes, he did mention that."  (Id.)  She admitted that

4

1  the fact Petitioner had assaulted a former girlfriend for going to

2  the police came to mind when he threatened her over the phone.

3  (Id.)  Carignan's statement scared her; she was "in shock."  (Id.

4  at 172.)  Cardenas stated, "He threatened my children.  They're

5  children . . . it's not their fault we were not working out and

6  they have nothing to do with this."  (Id.)  She confessed, "I

7  didn't know what will –– I was scared for my children.  I wanted

8  to go to the police."  (Id.)

9       She also testified that she had been assaulted five times by

10  Carignan before the incident in question.  (Id. at 222.)  Cardenas

11  stated that on the five previous occasions, Petitioner would choke

12  her and "hit [her] in the head."  (Id.)  She admitted that before

13  the April 22, 2006, incident, she had not reported Carignan's past

14  abuse.  (Id.)  She had only told her family about one of the prior

15  assaults, but Carignan's mother and her daughters witnessed two

16  prior assaults.  (Id. at 223.)

17                      **II.  PROCEDURAL BACKGROUND**

18       On December 12, 2006, a jury convicted Petitioner of

19  inflicting corporal injury upon a cohabitant (count one), assault

20  by force likely to produce great bodily injury (count two), making

21  a criminal threat (count three), attempting to dissuade a witness

22  or victim of a crime from reporting a crime (count four), and

23  three counts of violating a protective order regarding domestic

24  violence (counts six, seven, and nine).  See Cal. Penal Code §

25  136.1(b)(1 ) (West Supp. 2009); Cal. Penal Code §§ 245(a)(1),

26  273.5(a) (West 2008); Cal. Penal Code §§ 422, 667(b)-(i) (West

27  1999); (Lodgment No. 1, Clerk's Tr., 89–92, 94–95, 97.)  Carignan

28  waived a trial on the alleged prior convictions and admitted a

serious felony prior and a strike prior.  See Cal. Penal Code §§
667(a)(1), 668, 1192.7(c) (West Supp. 2009); Cal. Penal Code §§
667(b)-(I), 1170.12 (West 2004); (Lodgment No. 1, Clerk's Tr.,
vol. 1, 164, Dec. 12, 2006.)

    On January 24, 2007, Carignan was sentenced to a total of
fourteen years and four months in prison.  (Lodgment No. 1,
Clerk's Tr., vol. 1, 117, Jan. 24, 2007.)  For count one,
Petitioner was sentenced to the middle term of three years, which
was doubled to six years because of his prior strike.  (Lodgment
No. 2, Rep.'s Appeal Tr., vol. 4, 529-30, Jan. 24, 2007.)
Petitioner was given a two-year sentence for count two, which was
consecutive to all other terms of imprisonment.  (Id. at 531.)
Carignan also received a consecutive sentence of sixteen months
for count three.  (Id.)  The court did not impose a sentence for
count four because it was barred by California Penal Code § 654.
(Id.)  But the court imposed a five-year consecutive sentence
because of Petitioner's admission that he had a serious felony
prior conviction.  (Id.)

    On January 31, 2007, Petitioner filed a petition for writ of
habeas corpus in the San Diego Superior Court.  (Lodgment No. 9,
Carignan v. People, No. HSC10875 (Cal. Sup. Ct. filed Jan. 31,
2007 ) (petition for writ of habeas corpus).)  The superior court
denied Carignan's petition on February 1, 2007, pursuant to the
"Dixon rule," because "the sentence was only recently imposed,
[and] the issues raised in the Petition may be included in a
forthcoming appeal."  (Lodgment No. 10, In re Carignan, No.
HSC10875 (Cal. Sup. Ct. Feb. 1, 2007 ) (order denying petition));
see also In re Dixon, 41 Cal. 2d 756, 264 P. 2d 513 (1953).

1    Carignan then filed a direct appeal of his conviction,

2 alleging that his constitutional rights were violated by the

3 admission of evidence of his parole status and prior assault on a

4 former girlfriend, and the court erred by giving Petitioner a

5 consecutive sentence of two years for count two in violation of

6 California Penal Code § 654.  (Lodgment No. 3, Appellant's Opening

7 Br. at 14, 22, 29, People v. Carignan, No. D050301 (Cal. Ct. App.

8 Dec. 7, 2007).)  The California Court of Appeal affirmed the

9 judgment in part and reversed in part.  (Lodgment No. 6, People v.

10 Carignan, No. D050301, slip op. 1 (Cal. Ct. App. Dec. 7, 2007).)

11 The state appellate court found the trial court did not abuse its

12 discretion by admitting evidence that Carignan was on parole and

13 had previously assaulted a former girlfriend.  (Id. at 8-10.)  The

14 court also determined, "[T]he jury's verdict on counts 1 and 2

15 reflects a finding of a single 'act . . . punishable in different

16 ways by different provisions' and cannot, under section 654,

17 support separate punishments under each of those provisions."

18 (Id. at 14.)  Thus, the California Court of Appeal remanded the

19 case for resentencing.[2]  (Id. at 15.)

20    Carignan filed a petition for review in the California

21 Supreme Court on January 14, 2008.  (Lodgment No. 7, People v.

22 Carignan, No. S159880 (Cal. filed Jan. 14, 2008 ) (petition for

23 review).)  The court summarily denied the petition.  (Lodgment No.

24 8, People v. Carignan, No. S159880, Order (Cal. Feb. 20, 2008).)

25    On January 25, 2008, while his petition for review was

26 pending, Carignan filed a petition for writ of habeas corpus in

27

28    [2] Neither party provided the Court with Carignan's
resentencing information; however, Petitioner does not challenge
this aspect of his confinement.

the California Supreme Court alleging ineffective assistance of counsel.  (Lodgment No. 11, <u>Carignan v. Almager</u>, No. S160301 (Cal. filed Jan. 25, 2008 ) (petition for writ of habeas corpus).)  The petition was denied, without comment, by the state supreme court on July 7, 2008.  (Lodgment No. 12, <u>In re Carignan</u>, No. S160301, order (Cal. July 9, 2008).)

On December 10, 2008, Carignan filed his Petition for Writ of Habeas Corpus in this Court [doc. 1].  Petitioner named Warden Smelosky and California Attorney General Brown as the Respondents. Due to overcrowding in California state prisons, Petitioner was relocated to a prison in Mississippi [doc. 3].  On February 11, 2008, Carignan's First Amended Petition for Writ of Habeas Corpus was filed in this Court [doc. 4].  In his Amended Petition, Carignan named Warden Adams and California Attorney General Brown as the Respondents.

Because Petitioner is in custody under a state court judgment, the respondent must be the state officer who has custody of Carignan.  28 U.S.C.A. § 2242 (West 2006); <u>see</u> Rules Governing § 2254 Cases, Rule 2(a), 28 U.S.C.A. foll. § 2254 (West 2006). Warden Adams is the correct Respondent because he is the Warden of Tallahatchie County Correctional Facility, in Tutwiler, Mississippi, where Petitioner is currently in custody.  (Answer 1.)

Petitioner also named California Attorney General Brown as a Respondent in both his Petition and Amended Petition.  "The state's attorney general is a proper party only if the petitioner is not then confined, but expects to be taken into custody." <u>Hogan v. Hanks</u>, 97 F.3d 189, 190 (7th Cir. 1996); <u>See</u> Rules

Governing § 2254 Cases, Rule 2(b), 28 U.S.C.A. foll. § 2254.  "If the petitioner is in prison, the warden is the right respondent." (<u>Id.</u>)  Because Carignan is incarcerated, the only proper respondent is Warden Adams.

### III. STANDARD OF REVIEW

Because Carignan filed his Petition after April 24, 1996, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.  28 U.S.C.A. § 2244 (West 2008).  <u>Woodford v. Garceau</u>, 538 U.S. 202, 204 (2003) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997)).  AEDPA sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2008); <u>see also</u> <u>Reed v. Farley</u>, 512 U.S. 339, 347 (1994); <u>Hernandez v. Ylst</u>, 930 F.2d 714, 719 (9th Cir. 1991).  Carignan's Petition was filed on December 10, 2008, so AEDPA applies to this case.  <u>See</u> <u>Woodford</u>, 538 U.S. at 204.

To present a cognizable federal habeas corpus claim, a state prisoner must allege that his conviction was obtained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A petitioner must allege that the state court violated his federal constitutional rights. <u>Hernandez</u>, 930 F.2d at 719; <u>Jackson v. Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990); <u>Mannhalt v. Reed</u>, 847 F.2d 576, 579 (9th Cir. 1988).

9

1    A federal district court does "not sit as a 'super' state

2    supreme court" with general supervisory authority over the proper

3    application of state law.  Smith v. McCotter, 786 F.2d 697, 700

4    (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780

5    (1990 ) (holding that federal habeas courts must respect state

6    court's application of state law); Jackson, 921 F.2d at 885

7    (concluding that federal courts have no authority to review a

8    state's application of its law).  Federal courts may grant habeas

9    relief only to correct errors of federal constitutional magnitude.

10   Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989)

11   (stating that federal courts are not concerned with errors of

12   state law unless they rise to the level of a constitutional

13   violation).

14       In 1996, Congress "worked substantial changes to the law of

15   habeas corpus." Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

16   1997).  Amended § 2254(d) now reads:

17           An application for a writ of habeas corpus on
         behalf of a person in custody pursuant to the judgment
18       of a State court shall not be granted with respect to
         any claim that was adjudicated on the merits in State
19       court proceedings unless the adjudication of the claim
         --
20
             (1) resulted in a decision that was contrary
21           to, or involved an unreasonable application
             of, clearly established Federal law, as
22           determined by the Supreme Court of the United
             States; or
23
             (2) resulted in a decision that was based on
24           an unreasonable determination of the facts in
             light of the evidence presented in the State
25           court proceeding.

26   28 U.S.C.A. § 2254(d).

27       The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003),

28   stated that "AEDPA does not require a federal habeas court to

adopt any one methodology in deciding the only question that matters under § 2254(d)(1) -- whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." (<u>Id.</u> at 71) (citation omitted).  In other words, a federal court is not required to review the state court decision de novo.  (<u>Id.</u>)  Rather, a federal court can proceed directly to the reasonableness analysis under § 2254(d)(1).  (<u>Id.</u>)

The "novelty" in § 2254(d)(1) is "the reference to 'Federal law, as determined by the Supreme Court of the United States.'" <u>Lindh v. Murphy</u>, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), <u>rev'd on other grounds</u>, 521 U.S. 320 (1997).  Section 2254(d)(1) "explicitly identifies only the Supreme Court as the font of 'clearly established' rules." (<u>Id.</u>)  "[A] state court decision may not be overturned on habeas corpus review, for example, because of a conflict with Ninth Circuit-based law." <u>Moore</u>, 108 F.3d at 264.  "[A] writ may issue only when the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court." (<u>Id.</u>) (citing <u>Childress v. Johnson</u>, 103 F.3d 1221, 1225 (5th Cir. 1997); <u>Devin v. DeTella</u>, 101 F.3d 1206, 1208 (7th Cir. 1996); <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).)

Furthermore, with respect to the factual findings of the trial court, AEDPA provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

1 | 28 U.S.C.A. § 2254(e)(1).

2 | **III.  DISCUSSION**

3 | **A.  Claim One -- Sixth Amendment Violation**

4 | In ground one of his Amended Petition, Carignan alleges that

5 | he received ineffective assistance of counsel because his trial

6 | attorney, Roger Christiansen, failed to prepare a defense and

7 | neglected to communicate with him before trial.  (Am. Pet. 6.)

8 | Respondent contends that the California Supreme Court reasonably

9 | denied Carignan's claim because he failed to meet his burden under

10 | Strickland v. Washington, 466 U.S. 668 (1984).  (Answer Attach. #1

11 | Mem. P. & A. 5-7.)

12 | When deciding a § 2254 habeas corpus petition, the Court must

13 | "look to the last reasoned decision of the state court as the

14 | basis of the state court's judgment."  Polk v. Sandoval, 503 F.3d

15 | 903, 909 (9th Cir. 2007) (citing Benson v. Terhune, 304 F.3d 874,

16 | 880 n.5 (9th Cir. 2002).  When there is no reasoned state court

17 | decision, "an independent review of the record is required to

18 | determine whether the state court clearly erred in its application

19 | of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982

20 | (9th Cir. 2000); see also Pinholster v. Ayers, 525 F.3d 742, 766

21 | n.21 (9th Cir. 2008); Pham v. Terhune, 400 F.3d 740, 742 (9th Cir.

22 | 2005); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

23 | Petitioner did not submit a petition for writ of habeas corpus in

24 | the San Diego Superior Court or the California Court of Appeal.

25 | He filed his petition in the California Supreme Court; however,

26 | his petition was summarily denied.  (Lodgment No. 12, In re

27 | Carignan, No. S160301.)  Thus, this Court must conduct an

28 | independent review of the record.  See Delagado, 223 F.3d at 982.

To establish ineffective assistance of counsel, the inquiry is whether counsel's performance fell below an objective standard of reasonableness. <u>Strickland v. Washington</u>, 466 U.S. at 687–88. First, the petitioner must show that the attorney's performance was deficient. <u>Id.</u> at 687. Second, "the [petitioner] must show that the deficient performance prejudiced the defense." <u>Id.</u> In other words, "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

For Carignan to prevail on his ineffective assistance of counsel claim, he must satisfy both prongs of the <u>Strickland</u> test. <u>Id.</u> at 687. But courts need not address both prongs if the petitioner alleging ineffective assistance makes an insufficient showing on one. <u>Id.</u> at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Id.</u> Under the prejudice prong, Carignan carries the heavy burden of showing that the outcome of his trial would have been different if his attorney had not made unprofessional errors.

Petitioner asserts that Christiansen initially convinced him to go to trial; then counsel failed to visit him in prison to discuss the case and failed to communicate with him for at least two months. (Am. Pet. 6.) Carignan believes that Christiansen wrongly assumed that Petitioner was going to take the plea deal offered to him the day before trial. (<u>Id.</u>) Because of his attorney's mistaken belief that Petitioner was going to accept the

plea bargain, Christiansen did not have a defense prepared when they went to trial the next day.  (Id.)  To support his claim that his counsel was deficient, Petitioner argues that Christiansen "did not move for a continuance nor remove himself from the case." (Id.)  In his Traverse, he also asserts that counsel's failure to submit a limiting instruction prejudiced Carignan's case. (Traverse Attach. #1 Mem. P & A. 11.)

### i.  Lack of Communication

Petitioner contends that his attorney's lack of communication and visitation constitute ineffective assistance of counsel.  (Am. Pet. 6.)  Carignan claims, "County jail log-in records will reflect that Christiansen did not visit petitioner before trial. And phone records will indicate collect calls were blocked for over two months before trial."  (Am. Pet. 6.)  Petitioner asserts that after he and his attorney decided to go to trial, counsel stopped visiting him for three months.  (Id.)  Carignan does not allege the number, content, or length of his prior conversations with his attorney.

"Adequate consultation between attorney and client is an essential element of competent representation of a criminal defendant."  United States v. Tucker, 716 F.2d 576, 581 (9th Cir. 1983).  "While the amount of consultation required will depend on the facts of each case, the consultation should be sufficient to determine all legally relevant information known to the defendant."  Id. at 581-82 (footnote omitted).  In Turner v. Duncan, 158 F.3d 449, 457 (9th Cir. 1998), without addressing the content of their consultation, the Ninth Circuit concluded, "Counsel's admission that he spent at most forty-five minutes with

1  Turner prior to trial demonstrates deficient performance."  The

2  trial in <u>Turner</u> lasted a day and a half.

3       Here, Carignan's trial spanned several days, but there was

4  only a day and a half of testimony.  (Lodgment No. 1, <u>People v.</u>

5  <u>Carignan</u>, No. D050301 137-41, 143-46, 148-49 (Dec. 5, 6, 7, 2006 )

6  (mins.).)  Petitioner has not shown what he could have told his

7  lawyer that would have affected his case, other than he was

8  rejecting the plea offer.  There is no evidence that earlier

9  consultation with Christiansen would have changed the outcome.

10  Carignan has not demonstrated that during the course of his

11  conversations with counsel, his defense attorney had not obtained

12  all legally relevant information known to Petitioner.  Without

13  this showing, Petitioner has not established deficient

14  performance.  Even if the limited contact between Carignan and his

15  attorney, by itself, establishes deficient representation, unless

16  Petitioner was prejudiced, he is not entitled to relief.

17            **ii.  Lack of Defense**

18       Petitioner also alleges that his attorney failed to prepare

19  a defense, but he has not explained what defense his attorney

20  should have presented.  (Am. Pet. 6); <u>see</u> <u>United States v.</u>

21  <u>Hamilton</u>, 792 F.2d 837, 839 (9th Cir. 1986).

22       Opening statements were not given by either the prosecution

23  or Petitioner's counsel.  Christiansen did, however, pursue a

24  defense theory.  He cross-examined Cardenas about her motive in

25  pressing charges against Petitioner in an effort to undermine her

26  credibility.  (Lodgment No. 2, Rep.'s Appeal Tr., vol. 2, 220.)

27  He asked Cardenas if she knew about Carignan's recent production

28  of a music CD.  (<u>Id.</u>)  Christiansen asked her, "Isn't it true that

you're very jealous of the CD because of the success?"  (Id.)  He continued to press Cardenas on whether she was jealous of Petitioner's music career.  "And [the production of the CD] was with a very pretty women [sic], wasn't it?."  (Id.)  Christiansen also asked, "Isn't true that you were very concerned that you had no way to hold [Petitioner] after he became successful?"  (Id. at 221.)

Defense counsel called witnesses on Carignan's behalf. First, Christiansen called Hortencia Padilla, Petitioner's mother, as a witness.  (Lodgment No. 2, Rep's. Tr. vol. 2, 297–98 (Dec. 6, 2006)).  Counsel elicited testimony from her that shortly before Petitioner's arrest, Cardenas had threatened to call the police if he didn't repay a thousand dollar loan.  (Id. at 305–06.)  She would threaten to call his probation officer if Carignan did not do what Cardenas wanted.  (Id. at 312–13, 315–16.)  Defense counsel also called Petitioner's brother, Angelo Carignan, as a witness.  (Id. at 323–24.)  Angelo also testified that Cardenas frequently threatened to call Petitioner's parole officer or the police if Petitioner did not do as she asked.  (Id. at 327–28.) According to Angelo, Cardenas was jealous of the female singer working with Petitioner on a CD, and Cardenas feared that she was going to lose Petitioner once he became a successful musician. (Id. at 332–34.)  When Petitioner told Cardenas their relationship was over, she said, "We'll see who gets the last laugh."  (Id. at 334.)  Angelo stated, "[Cardenas] said she was going to call the police and [Petitioner's] parole officer to come get him."  (Id. at 336.)

1   Defense counsel also called Petitioner's sister, Ydima
2   Carignan, to testify.  (Id. at 370–71.)  She said that Cardenas
3   was jealous of the female working with Petitioner on his CD and
4   video.  (Id. at 377–78.)  She testified that Cardenas made several
5   threats to call Petitioner's parole officer.  (Id. at 381–83.)
6   Cardenas told Petitioner's sister that now that it looked like
7   Petitioner "was going to be successful, he was just going to leave
8   her."  (Id. at 385.)

9   In closing argument, Christiansen stressed to the jury that
10  Cardenas was jealous that Carignan was associating with the woman
11  he worked with on the CD.  (Lodgment No. 2, Rep.'s Appeal Tr.,
12  vol. 3, 451, Dec. 7, 2006.)  Christiansen argued that Cardenas
13  knew Petitioner was socializing with an attractive blond woman,
14  and she went to the police to "get him back" for using her.  (Id.)
15  Christiansen told the jury, "She [Cardenas] lied on all of it.
16  She was out to get Ricardo at any cost.  He was about to make it
17  big in the music business and she wasn't coming along . . . ."
18  (Id. at 453.)  Carignan's attorney called witnesses and presented
19  a defense to the jury.  This aspect of Petitioner's ineffective
20  assistance claim is not supported by the record.

21          **iii.  Failure to Ask for a Continuance**

22  Although Petitioner claims that Christiansen should have
23  moved for a continuance of the trial, (Am. Pet. 6), "broad
24  discretion [is] granted [to] trial courts on matters of
25  continuances[.]"  Morris v. Slappy, 461 U.S. 1, 11–12 (1983).
26  Carignan has not established why a continuance was necessary, how
27  the conduct of the trial would have differed if a continuance was
28  granted, or how the result of the trial would have differed.  He

1  offers no compelling reason for a continuance.  There is no basis

2  for concluding that a continuance would have been granted.

3      "Where a motion for continuance would prove futile, failure

4  to seek one cannot constitute ineffective assistance." <u>United</u>

5  <u>States v. Fish</u>, 34 F.3d 488, 495 (7th Cir. 1994 ) (citing <u>United</u>

6  <u>States v. Kamel</u>, 965 F.2d 484, 498 (7th Cir. 1992)).  Carignan has

7  not established that the failure to seek a continuance of the

8  trial constituted deficient performance.  This claim does not

9  entitle him to habeas relief.

10          **iv.  Failure to Submit a Limiting Instruction**

11      Belatedly, in his Traverse, Carignan asserts that if his

12  attorney had requested a limiting instruction concerning his

13  parole status, the outcome of the trial would have been different.

14  (Traverse Attach. #1 Mem. P & A. 11.)  "A traverse is not the

15  proper pleading to raise additional grounds." <u>Cacoperdo v.</u>

16  <u>Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994).  This Court has the

17  discretion to consider claims raised for the first time after the

18  filing of the Petition.  <u>See</u> <u>Brown v. Roe</u>, 279 F.3d 742, 745 (9th

19  Cir. 2002 ) (discussing equitable tolling argument raised by

20  petitioner for the first time as an objection to the magistrate

21  judge's findings and recommendation).  Federal habeas courts have

22  considered claims that are raised for the first time in a

23  traverse.  <u>Jackson v. Roe</u>, 425 F.3d 654, 656 n.1 (9th Cir. 2005).

24  The late claim, however, may be unexhausted because it was not

25  previously presented to the state courts.  <u>See</u> <u>id.</u> at 656–57.

26  Even so, an unexhausted claim can be denied on the merits.  28

27  U.S.C.A. § 2254(b)(2).

28

1    Generally, trial counsel's "decision not to request a
2    limiting instruction is 'solidly withing the acceptable range of
3    strategic tactics employed by trial lawyers in the mitigation of
4    damning evidence.'" <u>Musladin v. Lamarque</u>, 555 F.3d 830, 846 (9th
5    Cir. 2009 ) (citing <u>United States v. Gregory</u>, 74 F.3d 819, 823
6    (7th Cir. 1996)).  An attorney's failure to seek a limiting jury
7    instruction is not prejudicial if there is overwhelming evidence
8    of guilt.  <u>United States v. Noske</u>, 117 F.3d 1053, 1058-59 (8th
9    Cir. 1997 ) (explaining that counsel's failure to request a
10   limiting instruction was harmless error because there was
11   overwhelming evidence against appellant Joan); <u>Avila v. Adams</u>,
12   2009 WL 995557, at *3 (C.D. Cal. Apr. 10, 2009 ) (holding
13   counsel's failure to request a limiting instruction regarding
14   evidence of gang activity was not prejudicial due to overwhelming
15   evidence of defendant's involvement in the crime).

16   Christiansen told the trial judge that he was unsure whether
17   he wanted a limiting instruction about Petitioner's parole status.
18   (Lodgment No. 2, Rep.'s Appeal Tr., vol. 2, 215.)  The trial judge
19   stated, "[T]here's no reason [for the jury] to concern themselves
20   with the fact he's on parole.  That's not the issue before the
21   jury."  (<u>Id.</u>)  It was not unreasonable for Christiansen to
22   conclude that asking for a limiting instruction would only
23   highlight Carignan's criminal background.

24   Moreover, there was overwhelming evidence of guilt from
25   witnesses, photographs, and a previously issued protective order
26   against the Petitioner.  (Lodgment No. 2, Rep.'s Appeal Tr., vol.
27   1, 127, 130, 140; <u>id.</u> vol. 2, 177-81, 194, 222, 274, 275.)
28   Cardenas described the altercation.  (Lodgment No. 2, Rep.'s

19

Appeal Tr., vol. 1, 120-56; id. vol. 2, 167-84, 190-201, 216-53, 258-70.)  She claimed that "[h]e was mad" and "was hitting me and then he got an extension cord and he was holding it around the front part of my neck." (Lodgment No. 2, Rep.'s Appeal Tr., vol. 1, 127, 130.)  She testified that Carignan kicked and stomped on her with his tennis shoes and punched her with his fists.  (Id. at 140.)  This evidence supported Petitioner's conviction for inflicting corporal injury upon a cohabitant and assault by force likely to produce great bodily injury.  (Lodgment No. 1, Clerk's Tr., vol. 1, 53-54, 56-57.)

Witness Robin Romby testified that she saw two thumb print marks on Cardenas's neck two days after the incident.  (Lodgment No. 2, Rep.'s Appeal Tr., vol. 2, 274.)  She also saw "a bruise on [Cardenas's] back shoulder . . . two bruises on her arms . . . a bruise on her chest and she had a bruise on her back."  (Id. at 275.)  Some of the bruises were "really large, brown welts -- not brown, but black and purple, that look[ed] really new, freshly new bruises."  (Id.)  Romby asserted that Cardenas told her that "her and her partner, Ricky, had a fight that weekend or the night before."  (Id. at 274.)

Police pictures of Cardenas, taken one week after she reported the crime, were admitted into evidence.  (Lodgment No. 2, Rep.'s Appeal Tr., vol. 2, 176-81.)  The photos showed bruises on her right and left arms.  (Id. at 177-78.)  Pictures of the bruises on her right leg and right shoulder were also admitted into evidence.  (Id. at 179-81.)

Cardenas obtained a protective order against Carignan on May 3, 2006, which directed that he have "no personal, telephonic or

written contact with [Cardenas]." (Lodgment No. 1, Clerk's Tr.,
vol. 1, 6, May 3, 2006; Lodgment No. 2, Rep.'s Appeal Tr., vol. 2,
182–83).  In spite of the order, Petitioner called Cardenas on May
4, 5, 20, and 25, 2006. (Lodgment No. 2, Rep.'s Appeal Tr., vol.
2, 190, 193 –94, 197.)  Cardenas testified that during a collect
call on May 5, 2006, Petitioner admitted, "I didn't mean to
threaten the kids, only you." (Id. at 194.)  This admission was
evidence that Petitioner intended that his statement be understood
as a threat, an element of the charge of making a criminal threat.
(Lodgment No. 1, Clerk's Tr., vol. 1, 62.)

The police photos and Robin Romby's testimony corroborated
the victim's testimony and supported the jury's verdict that
Carignan was guilty of inflicting corporal injury upon a
cohabitant and assault by force likely to produce great bodily
injury. (Lodgment No. 1, Clerk's Tr., vol. 1, 53–54, 56–57.)

Carignan has not demonstrated a reasonable probability that
an instruction limiting the jury's consideration of his parole
status would have altered the outcome.  There was overwhelming
evidence connecting him to the crimes.  Petitioner has made an
insufficient showing that defense counsel's failure to request a
limiting instruction was deficient performance or that Carignan
suffered prejudice due to counsel's omission.  The Strickland test
for ineffective assistance is not satisfied, so the Court should
**DENY** habeas relief on this ground.

   **B.  Claims Two and Three -- Fourteenth Amendment Violation**s

Carignan alleges that his right to a fair trial was violated
by the trial court's admission of evidence that he was on parole
(ground two) and that he had previously assaulted a former

girlfriend (ground three).  (Am. Pet. 7, 10.)  Respondent argues

that both grounds fail to raise a federal question, and the state

court properly admitted the evidence without violating clearly

established Supreme Court law.  (Answer Attach. #1 Mem. P. & A.

10-13.)

Absent exceptional circumstances, federal courts "defer to

state-court factual findings, even when those findings relate to a

constitutional issue."  Hernandez v. New York, 500 U.S. 352, 366

(1991); see also Synder v. Louisiana, 128 S.Ct. 1203, 1213 (2008).

> Factual determinations by state courts are presumed
> correct absent clear and convincing evidence to the
> contrary . . . and a decision adjudicated on the merits
> in a state court and based on a factual determination
> will not be overturned on factual grounds unless
> objectively unreasonable in light of the evidence
> presented in the state-court proceeding . . . .

Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  But whether

evidence is admissible is a legal conclusion.  McKinney v. Rees,

993 F.2d 1378, 1382 n.4 (9th Cir. 1993 ) ("The legal conclusions

regarding the admissibility of evidence, however, are not findings

of fact, and are not binding on this court.").

"Federal courts 'will not review a question of federal law

decided by a state court if the decision of that court rests on a

state law grounded that is independent of the federal question and

adequate to support the judgment.'"  Cook v. Schriro, 538 F.3d

1000, 1025 (9th Cir. 2008 ) (quoting Coleman v. Thompson, 501 U.S.

722, 729 (1991)).  "[F]ailure to comply with the state's rules of

evidence is neither necessary nor a sufficient basis for granting

habeas relief."  Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th

Cir. 1991).

08cv2296 BTM (RBB)

"The Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." Spencer v. Texas, 385 U.S. 554, 563-64 (1967).  This guarantee does not transform the federal courts into a "rule-making organ for the promulgation of state rules of criminal procedure." Id.; see also Estelle v. McGuire, 502 U.S. 62, 70 (1991).  Because Carignan claims that his right to a fair trial was violated, the Court must consider "whether the admission of the evidence so fatally infected the proceedings as to render them fundamentally unfair." Jammal, 926 F.2d at 919. "[T]he trial court [must not have] committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process." Id. at 920 (quoting Reiger v. Christensen, 789 F.2d 1425, 1430 (9th Cir. 1986)).  On habeas corpus review, federal courts do not consider whether state evidentiary rulings were in error; the inquiry is whether the admission of the evidence violated the petitioner's due process right to a fair trial.  Estelle, 502 U.S. at 67-68.

This Court must determine whether evidence that Carignan was on parole and that he had previously assaulted an ex-girlfriend was relevant to an essential element of the prosecution's case or whether it was improperly used to show a propensity for violence. Id.  The Federal Rules of Evidence provide that "all relevant evidence is admissible . . . ." Fed. R. Evid. 402.  Relevant evidence is "any evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Irrelevant evidence

"may merely be a waste of time, may confuse the jury, or may cause serious prejudice to the defense."  McKinney, 993 F.2d at 1380.

Although a person's character may be relevant, it is inadmissible to show the person had a propensity to act in conformity with prior bad acts.  See Fed. R. Evid. 404(a); Old Chief v. United States, 519 U.S. 172, 181 (1997); United States v. Curtin, 489 F.3d 935, 943 (9th Cir. 2007).  Prior bad acts, crimes, or wrongs are usually not admissible to prove the character of the person or to show action in conformity with that character.  Fed. R. Evid. 404(b).  They may be admissible to prove a person's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," so long as the probative value outweighs the prejudicial effect.  Id.; United States v. Vargas, 552 F.3d 550, 556 (5th Cir. 2008 ) (finding appellant's prior involvement with  transporting drugs was probative of his knowledge or familiarity with the modes of transportation used to transport drugs and was not outweighed by its prejudicial effect).

"[E]vidence of a prior bad act . . . may not be offered to prove the defendant's criminal propensity but it is admissible if it is relevant to a material issue . . . ."  United States v. Cook, 454 F.3d 938, 941 (8th Cir. 2006); see also United States v. Rodriguez, 45 F.3d 302, 307 (9th Cir. 1995 ) ("Evidence of the fight would be admissible under Rule 404(b) only if the fight itself, and not [Petitioner's] character implied by the fight, provided an independent basis for establishing intent, motive or purpose in possessing the object the month earlier.")

08cv2296 BTM (RBB)

If a prior bad act is relevant to a material issue, it is still subject to Federal Rule of Evidence 403 and can be inadmissible if its probative value is substantially outweighed by its prejudicial effect.  See Fed. R. Evid. 403; United States v. Shellef, 507 F.3d 82, 101 (2d Cir. 2007); Curtin, 489 F.3d at 957; see also United States v. Pilgrim, 270 F. App'x 662, 663, available at 2008 U.S. App. LEXIS 6922, at *2 (9th Cir. Mar. 20, 2008) (holding petitioner's prior act was admissible to establish knowledge and absence of mistake, and admissibility was not outweighed by its prejudicial effect because petitioner's defense was "lack of knowledge").

"Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'"  Jammal, 926 F.2d at 920 (citation omitted ) (emphasis in original).  False material evidence admitted at trial deprives a petitioner of his right to a fair trial.  See Hall v. Dir. of Corr., 343 F.3d 976, 978, 985 (9th Cir. 2003) (holding that a due process violation occurred where no physical evidence linked petitioner to the crime and the prosecution relied on an informant's "jailhouse notes" that were false); Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985 ) (finding a violation of petitioner's due process rights when "crucial, critical [and] highly significant" evidence that was "sufficiently material to provide the basis for conviction" was erroneously admitted ) (quoting Nettles v. Wainwright, 677 F.2d 410, 414-15 (5th Cir. 1982)); cf. Alexandrov v. Gonzales, 442 F.3d 395, 407 (9th Cir. 2006 ) (holding there was a violation of the

Due Process Clause when the sole evidence for finding that petitioner submitted a frivolous asylum application did not meet the court's standard of trustworthiness and reliability).

### i.   Parole Status -- Ground Two

Carignan was charged and ultimately convicted of attempting to dissuade a witness or victim from reporting a crime.  See Cal. Penal Code § 136.1(b)(1); (Lodgment No. 1, Clerk's Tr., vol. 1, 92.)  California law provides, "Seldom will evidence of a defendant's prior criminal conduct be ruled inadmissible when it is the primary basis for establishing a crucial element of the charged offense."  People v. Garrett, 30 Cal. App. 4th 962, 967, 36 Cal. Rptr. 2d 33, 36 (1994); see also (Lodgment No. 6, People v. Carignan, No. D050301, slip op. at 9.)

Federal law provides that "[a] defendant's prior conviction is relevant and admissible when such a conviction is an element of a defendant's charged offense."  United States v. Aliso, 152 F.3d 1195, 1198 (9th Cir. 1998) (citing Old Chief v. United States, 519 U.S. 172 (1997)).  But when a criminal statute only requires that a prior conviction fall within a broad category of felonies in order to satisfy an element of a current charge, the charge and nature of the prior offense are inadmissible.  Old Chief, 519 U.S. at 186.

If prior criminal conduct or a prior bad act has been used to establish a defendant's propensity, the Supreme Court has "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."  Estelle, 502 U.S. at 75 n.5; see also Garceau v. Woodward, 275 F.3d 769,

1   774 (9th Cir. 2001) rev'd on other grounds, Woodward v. Garceau,

2   538 U.S. 990 (2003).  Moreover, the Ninth Circuit has held that

3   under AEDPA, federal courts must defer to a state's decision when

4   the Supreme Court fails to "'squarely address[] the issue in th[e]

5   case' or establish a legal principle that 'clearly extend[s]' to a

6   new context to the extent required by the Supreme Court. " Moses

7   v. Payne, 555 F.3d 742, 754 (9th Cir. 2008).

8        The state trial court held an in limine hearing to consider

9   the admissibility of evidence disclosing Carignan's parole status.

10  (Lodgment No. 2, Rep.'s Appeal Tr., vol. 1, 49–55, 64.)  The court

11  ruled:

12          I will grant the motion in limine with respect to
            being a parolee, as to the fact that she knew he was on

13          parole, that he had a parole agent and admitted – – I
            [am] permitting it, because I do believe it goes to the

14          charge and specifically the charge in count 4; that is,
            attempting to dissuade a witness from reporting a crime.

15          And I do find it represents it goes to the element of
            the offense he threatens to or tells him that [s]he

16          intends to call the person she knew to be his parole
            agent.

17

18  (Id.)

19       The California Court of Appeals agreed that Petitioner's

20  parole status was admissible at trial, and it did not violate his

21  due process rights because it was relevant to establish an element

22  of count four.  Carignan "attempted to prevent Cardenas from

23  reporting a crime to 'a peace officer or state or local law

24  enforcement officer or probation or parole or correctional

25  officer, prosecuting agency or to any judge." (Lodgment No. 6,

26  People v. Carignan, No. D050301, slip op. at 9 ) (emphasis in

27  original).)

28

At the trial, Cardenas testified that Petitioner threatened her if she told Steve" about the assault. (Lodgment No. 2, Rep.'s Appeal Tr., vol. 2, 171–72.)  Carignan's parole status was disclosed to identify "Steve" as Petitioner's parole officer.  A jury could have reasonably believed that Carignan's threat was an attempt to dissuade Cardenas from going to Petitioner's parole officer and reporting a crime.  Carignan's parole status was introduced at trial to satisfy an element of the crime charged in count four, attempting to prevent Cardenas from reporting a crime to a parole officer.  (Lodgment No. 6, <u>People v. Carignan</u>, No. D050301, slip op. at 9.)

Moreover, the fact that Petitioner was on parole was not admitted to prove that he had a propensity to commit the current crimes.  The offense which led to his prior conviction and the reason for Carignan's parole were not introduced at trial. Although Petitioner claims that a limiting instruction should have been given, as discussed above, the Supreme Court has not "held that a limiting instruction is <u>always</u> necessary to protect defendant's due process rights." <u>Basurto v. Luna</u>, No. 08–35277, 291 F. App'x 41, 43, <u>available</u> <u>at</u> 2008 WL 3861813, at *1 (9th Cir. Aug. 18, 2008 ) (emphasis in original).  Even if Carignan's status as a parolee could be used to infer he had a propensity to commit the crime, "[t]he Supreme Court has never held that the admission of prior bad acts evidence to prove propensity is unconstitutional." <u>Id.</u> (citing <u>Estelle</u>, 502 U.S. at 75 n.5; <u>accord</u> <u>Mejia v. Garcia</u>, 534 F.3d 1036, 1045–46 (9th Cir. 2008)); <u>Alberni v. McDonnell</u>, 458 F.3d 860, 863–67 (9th Cir. 2006).

08cv2296 BTM (RBB)

Lastly, the state appellate court concluded that the evidence was relevant, and although Carignan's parole status "had the potential for some prejudice," the court could not conclude that the "potential [prejudice] <u>substantially</u> outweighed the probative value." (Lodgment No. 6, <u>People v. Carignan</u>, No. D050301, slip op. at 9-10.) On federal habeas review, the Court does not reexamine whether under California law the evidence was inadmissible because it was more prejudicial than probative. <u>McKinney</u>, 993 F.2d at 1384. Instead, this Court must determine whether Petitioner was denied a fair trial. The state court addressed this issue as well. "Having determined that the trial court did not abuse its discretion by admitting Carignan's parole status and prior assault into evidence, we also reject, for the same reasons, the conclusory claim that admission of the evidence violated his constitutional due process and fair trial rights." (<u>Id.</u> at 10, n.6.) The state court's decision was not an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts. <u>See</u> <u>Mejia v. Garcia</u>, 534 F.3d at 1046.

Petitioner's claim for habeas relief on ground two should be **DENIED**.

### ii. Assault on Ex-Girlfriend -- Ground Three

Carignan's third ground for relief mirrors ground two, except the evidence he believes violated his right to a fair trial was a prior assault of a former girlfriend. (Am. Pet. 10.) The state appellate court found that Petitioner's prior assault of an ex-girlfriend for "ratt[ing] him out" to the police was relevant to

1  the criminal threat charge.  (Lodgment No. 6, <u>People v. Carignan</u>,

2  No. D050301, slip op. at 6-7.)

3       The jury was instructed that to convict for a criminal

4  threat, the prosecution must prove the following:

5          1) the [Petitioner] willfully threatened to unlawfully
           kill or unlawfully cause great bodily injury to Karla
6          Cardenas; 2) the [Petitioner] made the threat to Karla
           Cardenas orally; 3) [Carignan] intended that his
7          statement be understood as a threat; 4) the threat was
           so clear, immediate, unconditional, and specific that it
8          communicated to Karla Cardenas a serious intention and
           the immediate prospect that the threat would be carried
9          out; 5) the threat actually caused Karla Cardenas to be
           in sustained fear for her own safety or the safety of
10         her immediate family; and 6) [her] fear was reasonable
           under the circumstances.

11

12  (Lodgment No. 1, Clerk's Tr., vol. 1, 62.)  The prosecution had

13  the burden to present evidence of Cardenas's state of mind,

14  specifically that she reasonably feared for her or her immediate

15  family's safety and that the fear was reasonable.  <u>See</u> Cal. Penal

16  Code § 422; (Lodgment No. 1, Clerk's Tr., vol. 1, 62.)

17       The California Court of Appeal noted that in criminal cases

18  where the defendant is charged with making a criminal threat,

19  "'evidence of past domestic abuse was highly relevant and

20  probative' with respect to a victim's mental state in § 422

21  prosecution."  (Lodgment No. 6, <u>People v. Carignan</u>, No. D050301,

22  slip op. at 7 ) (citing <u>People v. McCary</u>, 58 Cal. App. 4th 159,

23  172, 67 Cal. Rptr. 2d 872, 880 (1997)).)  Cardenas testified that

24  she was scared, in shock, and wanted to go to the police when

25  Carignan told her, "Just know that if you go to the cops I'll send

26  some crazy motherfucker to get you.  Watch your babies."

27  (Lodgment No. 2, Rep.'s Appeal Tr., vol. 2, 172.)  Petitioner told

28  her that he previously beat up an ex-girlfriend for going to the

1  police.  (<u>Id.</u> at 173.)  The California Court of Appeal found this

2  evidence relevant to whether Cardenas's fear was reasonable and

3  whether Petitioner meant his statement as a threat.  (Lodgment No.

4  6, <u>People v. Carignan</u>, No. D050301, slip op. at 7-8.)

5      Petitioner argues that his prior assault of an ex-girlfriend

6  should not have been admitted into evidence because the jury could

7  have relied on Cardenas's testimony that Carignan previously

8  physically abused her to establish that she reasonably feared any

9  threats he might have made.  (Am. Pet. 10-11.)  This issue was

10 also considered by the trial court during an in limine hearing.

11 (Lodgment No. 2, Rep.'s Appeal Tr., vol. 1, 52, 61.)  Cardenas

12 "outlined a series of incidents that were going through her mind,

13 which include[d] the fact that he had shot at people, beat up

14 people.  He had beaten up an ex-girlfriend." (<u>Id.</u> at 61.)  The

15 court found the testimony was relevant and highly probative, which

16 outweighed any prejudicial effect.  (<u>Id.</u> at 81-82, 84-85.)

17     The state appellate court concluded that although the

18 prosecution could have relied on other evidence, the trial court

19 did not have to reject evidence that Carignan assaulted a former

20 girlfriend because she went to the police.  (Lodgment No. 6,

21 <u>People v. Carignan</u>, No. D050301, slip op. at 8.)  The court held

22 that the prosecution could choose what evidence to present, and

23 section 352 of the California Evidence Code did not require that

24 the prior assault be excluded.  (<u>Id.</u>)

25     Petitioner contends that the evidence was primarily presented

26 to prove he had a propensity to commit the crimes.  (Traverse

27 Attach. #1 Mem. P & A. 9.)  The evidence was probative of whether

28 the threat caused Cardenas to fear for her safety or for the

1  safety of her immediate family and whether her fear was
2  reasonable.  (Lodgment No. 1, Clerk's Tr., vol. 1, 62.)  This
3  evidence was relevant.

4       Carignan claims that his prior assault of an ex-girlfriend
5  for going to the police was so prejudicial that it outweighed the
6  probative value of the evidence.  (Am. Pet. 10.)  On habeas
7  review, the Court is "only concerned with its relevance."  <u>See</u>
8  <u>McGivney</u>, 993 F.2d at 1384.  Petitioner's prior assault of his
9  former girlfriend was relevant to the case.  "Only if there are <u>no</u>
10 permissible inferences the jury may draw from the evidence can its
11 admission violate due process."  <u>Jammal</u>, 926 F.2d at 920.
12 Consequently, the state appellate court's determination that
13 Petitioner's prior act was admissible did not violate his due
14 process rights under the Fourteenth Amendment.  The state court
15 decision was not an unreasonable application of Supreme Court law
16 or based on an unreasonable determination of the facts.  The
17 admission of the prior assault, even if characterized as
18 propensity evidence, is not contrary to clearly established law.
19 <u>See</u> <u>Mejia v. Garcia</u>, 534 F.3d at 1046.

20      Petitioner's claim for relief on ground three should be
21 **DENIED**.

22                          **V. CONCLUSION**

23      For the reasons set forth above, the Court recommends that
24 Carignan's Petition for Writ of Habeas Corpus be **DENIED** in its
25 entirety.

26      This Report and Recommendation will be submitted to the
27 United States District Court Judge Barry Ted Moskowitz, assigned
28 to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

                                                08cv2296 BTM (RBB)

1   Any party may file written objections with the Court and serve a

2   copy on all parties on or before November 23, 2009.   The document

3   should be captioned "Objections to Report and Recommendation."

4   Any reply to the objections shall be served and filed on or before

5   December 7, 2009.

6        The parties are advised that failure to file objections

7   within the specified time may waive the right to appeal the

8   district court's order.   Martinez v. Ylst, 951 F.2d 1153, 1157

9   (9th Cir. 1991).

10

11  Dated: October 20, 2009

        RUBEN B. BROOKS

12                                        United States Magistrate Judge

13  cc:   Judge Moskowitz
           All parties of record

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28